NO JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL MASTERSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHEETAH MOBILE INC.; et al.,<br><br>Defendants. | CASE NO. CV 17-8141-R<br><br>ORDER GRANTING DEFENDANT CHEETAH MOBILE'S MOTION TO DISMISS |

Before the Court is Defendant Cheetah Mobile, Inc.'s ("Cheetah") Motion to Dismiss Plaintiff's First Amended Complaint ("FAC"), filed on March 1, 2018. (Dkt. 29). Defendant Yeung later joined in the Motion. (Dkt. 46). The Court took this matter under submission on May 2, 2018.

Plaintiff alleges the following. Cheetah is a developer of mobile and computer applications. Cheetah's revenue primarily comes from selling advertisement space on its applications. Cheetah charges its advertising customers based on user engagement, which is partly measured by how many "clicks" advertisements generate; the more clicks an advertisement receives, the more Cheetah charges the customers. Plaintiff is an investor in Cheetah.

During the relevant period, Cheetah engaged in click fraud, or the use of bots and click farms to illicitly generate more clicks on advertisements. Because these clicks did not result from

actual user engagement, Cheetah's revenues were artificially inflated. Cheetah did not disclose in its Securities and Exchange Commission ("SEC") filings that its advertising revenue was largely based on use of click farms. Cheetah also issued press releases attributing its revenue increase to its growing user base, when in fact it was the fraudulent click farms responsible for the increase. After a third party published a report (the "Prescience Report") accusing Cheetah of engaging in click fraud, Cheetah's stock price dropped, injuring Plaintiff.

Plaintiff sues all defendants for violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"). Plaintiff's claim, made on information and belief, is based on (1) Cheetah's SEC filings omitting disclosure of use of click farms and (2) press releases crediting its growing user base as the catalyst for its revenue increase. Plaintiff alleges these filings and press releases were false and misleading because Cheetah's revenue increase was actually based on the use of fraudulent click farms. Cheetah and Yeung move to dismiss for failure to state a claim.

Dismissal under Rule 12(b)(6) is proper when a complaint exhibits either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Under the heightened pleading standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," so that the defendant receives "fair notice of what the…claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 570; *Iqbal*, 556 U.S. at 698-99. "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

To state a claim under Section 10(b) of the Exchange Act, a plaintiff must allege: "(1) a material misrepresentation or omission of fact [falsity], (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1014 (9th Cir. 2005).

In 1995, Congress passed the Private Securities Litigation Reform Act of 1995 ("PSLRA"), imposing "heightened pleading requirements in actions brought pursuant to § 10(b)." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007). When pleading the first

element of a Section 10(b) claim—falsity—the PSLRA requires "particularized allegations" that identify "each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1); *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001). This standard represents a modified Rule 9(b) approach, although the complaint must also satisfy the heightened pleading requirements of Rule 9(b). *Brown v. China Integrated Energy, Inc.*, 875 F. Supp. 2d 1096, 1105 (C.D. Cal. 2012); *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 613 (9th Cir. 2017).

Here, Plaintiff does not meet the falsity element of its Section 10(b) claim because Plaintiff does not allege particularized facts showing that Cheetah actually used click farms. Absent such allegations, Plaintiff cannot show that Cheetah's SEC filings or press releases were false or misleading. Plaintiff does not allege, for example, who directed the purchase of click farms, how the click farms were acquired, where the click farms were acquired, how many click farms were used, or when Cheetah began using click farms. Plaintiff therefore fails to plead facts with the requisite specificity under the PSLRA. *See In re Splash Tech. Holdings, Inc. Secs. Litig.*, 160 F. Supp. 2d 1059, 1072 (N.D. Cal. 2001) ("When alleging that particular statements were *false* and *misleading*, the complaint must make specific references to specific facts as the basis for the falsity allegation.").

Instead, Plaintiff relies exclusively on the conclusions of (1) the Prescience Report, which is based on the word of two anonymous former Cheetah employees, (2) two confidential witnesses corroborating the report, and (3) a Wall Street Journal article. As explained below, the first two sources are not described with sufficient particularity to establish their personal knowledge of Cheetah's alleged use of click farms, and the third source does not even mention click farms.

The Court treats the first two sources under the umbrella of confidential witnesses. In the Ninth Circuit, a plaintiff must describe a confidential witness with "sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged" and provide "adequate corroborating details." *Daou*, 411 F.3d at 1015; *In re*

*STEC Inc. Secs. Litig.*, 2011 WL 4442822, at *3 (C.D. Cal. Jan. 10, 2011) ("Allegations based on statements of confidential witnesses must describe the witnesses with sufficient particularity to establish their personal knowledge and reliability.").

Here, Plaintiff's sources are not described with "sufficient particularity" or bolstered by adequate corroborating details. The Prescience Report—submitted as an attachment to the FAC—relies on the word of two anonymous former Cheetah employees.[1] *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (courts consider attachments to complaint on motions to dismiss). The report does not disclose the first employee's former position but states that he or she "had worked on [Cheetah's] utility apps." (Report at 39). The report does not explain in what capacity the employee worked on the application or when the employee worked for Cheetah. The report thus fails to include "employment information with ample detail to satisfy *Daou*'s requirement that a complaint make apparent a confidential witnesses' position within the defendant corporation." *Zucco Partners, LLC v. Digimarc Corp*, 552 F.3d 981, 996 (9th Cir. 2009). Further, the employee does not offer specific details about Cheetah's alleged use of click farms. *In re Downey Secs. Litig.*, 2009 WL 2767670, at *9 (C.D. Cal. Aug. 21, 2009) ("[T]he statements of a confidential witness are disregarded if lacking in specificity…."). The employee says only that Cheetah bought click farms that generate impressions and, separately, that Facebook and Cheetah entered into a new contract after Facebook spotted fake users. These statements do not demonstrate personal knowledge of Cheetah's alleged use of click farms and are not corroborated by additional facts. The second employee does not even mention use of click farms.

Plaintiff's own confidential witnesses fare no better. The FAC contains only details about the title, responsibilities, and timeframe of each witness's job at Cheetah, as well as generalized statements that Cheetah used bots and management was aware of this use. For example, Confidential Witness 1 ("CW1") is described as a "former Account Manager" at Cheetah responsible for advertisement accounts of certain customers. Plaintiff then recites conclusory allegations that CW1 stated that Cheetah used the fraudulent bots during CW1's tenure and management was aware of the fraud. Plaintiff offers even less detail about Confidential Witness 2

[1] It also begins with a disclaimer that readers should assume Prescience "ha[s] a short interest in Cheetah Mobile stock." (Report at 1).

("CW2"). Plaintiff therefore does not offer specific facts supporting the witnesses' personal knowledge of fraud. *See Zucco Partners*, 552 F.3d at 996 (finding description of confidential witnesses insufficient where plaintiff described only job descriptions and responsibilities without "the requisite particularity to establish that certain statements of these confidential witnesses are based on the witnesses' personal knowledge"). Courts have found much more detailed descriptions of confidential witnesses inadequate to meet the particularity standard. *See, e.g.*, *Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1114-16 (N.D. Cal. 2009).

Plaintiff curiously argues that the pleading standards should be relaxed because relevant information is solely within Cheetah's control. (Opposition at 6-7). But Plaintiff's claim is based largely on information from confidential witnesses that purportedly have personal knowledge of Cheetah's fraud. If the witnesses have the knowledge Plaintiff purports, Plaintiff should be able to offer more than "mere conclusory allegations of fraud." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

Lastly, the one-page Wall Street Journal article, entitled, "Facebook Tweaks Algorithm, Tripping Cheetah Mobile," does not even mention or allude to the use of click farms. *See Lee*, 250 F.3d at 688 (on motion to dismiss, courts consider documents the complaint relies on, even if not attached to complaint). Accordingly, it does not bolster Plaintiff's claim.

Because Plaintiff does not plead facts supporting Cheetah's use of fraudulent click farms with sufficient particularity, and because Cheetah's alleged use of click farms is the sole basis of Plaintiff's claim, Plaintiff cannot demonstrate that Cheetah's SEC filings or press releases were false or misleading. The question of materiality is therefore irrelevant. Plaintiff's Section 10(b) claim must fail on the first prong.

\\\

\\\

\\\

\\\

\\\

\\\

**IT IS HEREBY ORDERED** that Cheetah's Motion to Dismiss, joined by Defendant Yeung, is GRANTED. (Dkt. 29).

Dated: June 27, 2018.

MANUEL L. REAL
UNITED STATES DISTRICT JUDGE